# CRIMINAL COURT OF BALTIMORE CITY.

Filed June 23, 1923.

STATE OF MARYLAND
VS.
WILLIAM A. GILLESPIE AND
HAROLD R. DICKEY, JR.

*Robert F. Leach, Jr.,* States Attorney. and *Eugene A. Edgett,* Assistant State's Attorney, for State of Maryland.

*Randolph Barton, Jr., William Pepper Constable* and *Samuel J. Fisher* for traversers.

GORTER, CARROLL T. BOND, STANTON, JJ.—

The reasons which lead to the verdict to be rendered in this case may be briefly stated thus:

There was a public attack on the business of "blind pools," as they are commonly called. That was a business conducted or pretended to be conducted, on a scheme for lumping the money of a large number of customers in the hands of the dealer on the securities market, and speculating on the market for the joint profit, the dealer acting as a commission agent compensated by a percentage of all profits. Representations and assurances made incidentally held out a prospect of extraordinary profits, with liberty to customers to withdraw whole and without loss at any time. But the public was now warned that the profits could not be earned, and that the scheme was fraudulent; and as a step in the exposure, those conducting blind pools were challenged to submit their business to an impartial audit of unimpeachable correctness.

Newton, who was conducting such a business called in Gillespie, an accountant of his own selection, to make a private audit, and Gillespie put Dickey in charge of the work on the books. This was obviously a move to avoid meeting the challenge of an impartial audit, and at the same time to allay the fears of the public and save the business.

Gillespie and Dickey saw at once by the books—even without any knowledge from other sources—that Newton was not in fact making any profits, that he was paying dividends to customers out of principal, that he was not carrying on any campaign of dealing on the market as the scheme of business implied, and that he was paying little or no attention to the trust element which was held out as one of the essential features which protected the customers' money. Not a cent of assets was in any way secured to him as trustee for the pool. Such assets as he had were held in three forms of his own name. Although the certificate given out to customers provided for investment of their funds in securities listed on the New York Stock Exchange, or other exchanges, a large part of them were not listed securities at all. Newton was, as the books showed, using some of the money of customers for his private expenses.

Notwithstanding this condition disclosed to them, the accountants, after one ineffectual effort at figuring it out, made up a statement in which they included not only all the securities under the three Newton names, but also notes which antedated the beginning of the business and a trading account under the name of "Ward," the money used by Newton, and a missing $1,000 as bills receivable, and money paid out as commissions to get customers. And on this basis they figured out solvency, and issued a statement to satisfy the public that their venture was in good shape.

When we take up that statement we find it an astutely worded one—by whoever drew it up—and we find it false in several particulars.

The books and accounts were not "correct," according to the general understanding of such a statement.

The business was not solvent and capable of meeting all obligations and contracts entered into with its clients, as that statement would be understood by customers, and as the contracts with them required.

It was not purchasing and also selling listed securities in large volume.

And the inventory of securities at the market at the close of business August

15, 1922, did not show a substantial surplus over and above the obligations.

And this false statement was prepared and given out to enable a fraudulent business preying on the public, to survive the attack made upon it. That is the essence of the charge in the indictment, and the evidence sustains that charge.

Dickey had the work in charge. But in view of the fact that it was started by Gillespie with Newton, that reports were made to Gillespie from time to time as it went on, and that Gillespie took part in drafting the letter for publication, he cannot be relieved by the fact that his subordinate, Dickey, was in charge of the work on the books.